YOUNG v KMART CORPORATION

Docket No. 59686. Submitted December 15, 1982, at Detroit.—Decided
    March 8, 1983. Leave to appeal applied for.

Plaintiff, Catherine Young, worked a service desk for defendant,
    Kmart Corporation, in December, 1975, when she had a heart
    attack. Plaintiff eventually claimed workers' disability compen-
    sation benefits. The Workers' Compensation Appeal Board
    granted an open award from the last day plaintiff worked until
    further order of the bureau. Defendant appealed. *Held:*

1. There was evidence to support the appeal board's conclu-
sion that job-related stress contributed to plaintiff's heart at-
tack. A disease, such as a heart attack, no matter how ordi-
nary, is compensable under the Worker's Disability Compensa-
tion Act if it arises out of and in the course of employment.

2. The board did not err in awarding future benefits.

3. Plaintiff did not meet the notice and claim limitation
periods under the statute as it was at the time. However, the
statute had a tolling provision where the employer had notice
of the injury and did not inform the bureau. Plaintiff's claim
was timely because of the tolling provision.

Affirmed.

1. WORKERS' COMPENSATION — HEART ATTACK — JOB-RELATED STRESS.

A disease, such as a heart attack, no matter how ordinary, is
compensable under the Worker's Disability Compensation Act
if it arises out of and in the course of employment; job-related
stress may cause heart attacks.

2. WORKERS' COMPENSATION — LIMITATION OF ACTIONS — TOLLING.

Under a former statute, the running of the period of limitation
for the claiming of benefits for a work-related injury was tolled
if the employer had notice of the injury and failed to report it
to the bureau (former MCL 418.381; MSA 17.237[381]).

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation §§ 300, 303.
[2] 82 Am Jur 2d, Workmen's Compensation §§ 445, 605.

*Stalburg, Bean & Laritz, P.C.* (by *Edwin S. Bean* and *Sheldon B. Greenblatt),* for plaintiff.

*Wilfred F. Curley,* for defendant.

Before: CYNAR, P.J., and N. J. KAUFMAN and MACKENZIE, JJ.

N. J. KAUFMAN, J. The plaintiff, Catherine Young, began work for the defendant, Kmart, in 1966 as a stock clerk. She worked as a stock clerk until 1970, when she started working at the service desk of the Kmart store at Oakland and Grand River Avenue in the City of Detroit. She worked until she suffered a heart attack in December of 1975. Prior to 1975, the plaintiff had not suffered any illness which required hospitalization and was never under a physician's care for anything other than minor ailments.

Her duties as a service desk clerk included waiting on customers with complaints, taking care of lay-aways and bringing change to the cashiers. According to the plaintiff's testimony, she would carry approximately 40 pounds of coins from a second-floor office down a flight of stairs to the cash registers and to the service desk each morning. She was called on quite frequently to supply change for the cashiers.

The plaintiff's last day of work was December 16, 1975. The store was unusually busy because of the Christmas season. The plaintiff was scheduled to work her usual shift from 9:30 to 5:00. Because of the number of customers and the fact that some employees did not come to work, however, plaintiff was asked to work until 8:00 p.m. that evening. She agreed to stay.

During the day, the plaintiff was very busy. In addition to going to and from the second-floor office

to get change for the cashiers, she had to carry two boxes up from the basement. Moreover, she was unable to complete her lunch hour and was very tired by early afternoon.

The plaintiff testified that shortly after lunch she began to feel tired and experienced some pain under her left breast. She believed that they were gas pains. The pains in her chest continued all afternoon, but she continued to work after taking several short breaks. After a short time off for supper, she continued to work until about 8:00 that night.

She went home and the pain continued to worsen. When the pain did not subside during the night, she sought medical attention. She went to Harper Hospital at about 6:00 a.m. on December 17th. She was treated for gastritis and released to return home. When the pain did not subside, however, she returned to the hospital at about 5:00 p.m. and was admitted to the intensive care unit under the diagnosis of a heart attack.

The plaintiff has not worked since December 16, 1975. She applied for worker's compensation benefits.

Both physicians who examined the plaintiff concurred that the plaintiff had suffered a heart attack based on their independent examinations of the plaintiff and review of the hospital records taken at the time that she was admitted. They testified by deposition before the hearing referee. Dr. Sheldon N. Kaftan, D.O., certified in internal medicine, opined that the plaintiff had suffered a previous heart attack and that she suffered from degenerative arteriosclerotic heart disease. Dr. Kaftan also indicated that the plaintiff had angina pectoris and mild, chronic obstructive lung disease caused by plaintiff's long-standing smoking habit.

Dr. Kaftan gave an electrocardiogram (EKG) to the plaintiff. The EKG disclosed that the plaintiff had suffered heart damage to the inferior wall of the heart. Dr. Kaftan noted plaintiff's smoking habit and that her cholesterol level was high. In response to a lengthy hypothetical, Dr. Kaftan opined that the plaintiff had the beginnings of her heart attack at her place of employment and that damage to the heart occurred at the time that she thought she was having gas pains. Moreover, Dr. Kaftan said that that plaintiff was *totally disabled from her former employment* and that it would be *dangerous* for her to return to that job because of the physical and emotional stress involved.

On cross-examination, Dr. Kaftan admitted that arteriosclerosis was an ordinary disease of life and that the plaintiff had a high risk of coronary heart disease because of her smoking habit and elevated cholesterol level. Still, he continued to believe that the stress of the work day had directly contributed to the plaintiff's heart attack.

Dr. Sidney L. Schuchter, M.D., examined the plaintiff on February 20, 1978, at the defendant's request. Dr. Schuchter gave the same patient history as did Dr. Kaftan, indicating that the plaintiff had been a heavy cigarette smoker for many years and that her cholesterol level was an extremely high 355.[1] Dr. Schuchter concluded, as did Dr. Kaftan, that plaintiff had a heart attack and that she is disabled. But Dr. Schuchter disagreed that the plaintiff's heart attack had any causal relationship with plaintiff's work. Dr. Schuchter opined that the narrowing of the heart arteries and formation of blood clots would take place

---

[1] We express no opinion on the effects of cholesterol levels on the heart.

whether or not a person exerted herself. He stated that ordinary work stress, even heavy physical stress, does not cause heart attacks. The doctor did state, though, that very unusual stress, under unusual circumstances, might precipitate cardiac arrythmia, which might precipitate a heart attack.

The hearing referee denied benefits, finding that the plaintiff did not establish a causal relationship between her employment and the heart attack. The Workers' Compensation Appeal Board reversed in a unanimous opinion dated July 29, 1981. The board gave an open award of $90 per week from December 17, 1975, until the further order of the bureau. From this decision the Kmart Corporation appeals.

I

The defendant first argues that the board erred in finding that the plaintiff's heart attack arose out of and in the course of employment because she suffers from an "ordinary disease of life" (arteriosclerosis) and the heart attack occurred at least 24 hours after the plaintiff last worked. We reject this argument for the reasons given in *Kostamo v Marquette Iron Mining Co,* 405 Mich 105; 274 NW2d 441 (1979). *Kostamo* was a set of consolidated cases involving workers who alleged heart attacks resulting from job-related stress. Although the Supreme Court was divided four-to-three on some of the consolidated cases, all seven justices agreed in one of the cases, *Jarman v Atlas Supply Co.* In *Jarman* the Court affirmed a Workers' Compensation Appeal Board award of benefits to the plaintiff. In the opinion of the Court, Justice Levin determined that the board adequately sup-

ported its conclusion that Jarman's heart attack was precipitated in part by job-related stress:[2]

"The WCAB in *Jarman* does not appear to have granted preclusive effect to a medical conclusion, as it did in *Kostamo.* The bulk of the opinion is devoted to a detailed examination of the circumstances surrounding Jarman's heart attack underlying the expert's opinion. The WCAB's review of the testimony—the difficult work schedule, time pressures, physical labor and sense of responsibility under which Jarman labored—adequately support *its* conclusion that work-related physical and emotional stress existed and contributed to Jarman's heart attack." 405 Mich 137.

In the minority opinion Justice RYAN stated that the appellate courts are bound to uphold a board's factual decisions if they are supported by any of the evidence presented. 405 Mich 147. "The sole question on review by the Court of Appeals, and in turn here, is 'whether there is any evidence to support the award.' " 405 Mich 147, fn 2, quoting *Mitchell v Metal Assemblies, Inc,* 379 Mich 368, 370; 151 NW2d 818 (1967). The determination of causation is strictly factual, Justice RYAN reasoned, and therefore the board must be upheld if any evidence supports its conclusions. 405 Mich 146.

In both opinions it was evident that the Court accepted the idea that job-related stress could cause heart attacks. Thus, the defendant's argument that an "ordinary disease of life" is not compensable is erroneous. If the disease—no matter how "ordinary"—arises out of and in the

---

[2] In the main case, *Kostamo,* the board issued only a conclusory opinion which did not link the medical testimony of an illness to the lay testimony about job conditions. The Court held that the board gave the medical testimony preclusive effect, failing to consider *all* the testimony given. 405 Mich 130-131. As a result, the cause in *Kostamo* was remanded for detailed findings. 405 Mich 138.

course of employment it is compensable under the Worker's Disability Compensation Act. See 405 Mich 145, fn 1 (RYAN, J., *dissenting*), citing 1 Larson, The Law of Workmen's Compensation, §§ 6.00-13.23, pp 3-1 to 3-342. The board's decision here is adequately supported by some of the testimony given and does not give preclusive weight to the medical testimony.

We note in passing that the defendant's citation to *Fries v Kalamazoo Stove & Furnace Co,* 338 Mich 65; 61 NW2d 87 (1953), is inappropriate. In *Fries* the Supreme Court held that the board should have denied compensation because the board expressly admitted in its opinion that it was pure conjecture whether the plaintiff's illness arose out of and in the course of employment. A plaintiff has the burden of proving causation, and that burden was unmet in *Fries.* If, on balance, the plaintiff's case and the defendant's case are *equally* balanced in their persuasive effect on the board, the defendant is entitled to judgment because the plaintiff did not prove the cause by a preponderance of the evidence. Here, however, the plaintiff met her burden and the board's opinion expressed none of the qualifying reservations expressed in the *Fries* board's opinion.

## II

The defendant next argues that the board erred in awarding future benefits because there was no testimony that the plaintiff's subsequent heart problems were related to the heart attack of December 17, 1975. We disagree. Both doctors testified that the plaintiff should not return to work. This alone supports the conclusion that the continuing problems stemmed from the job-related heart attack. Additionally, the defendant—after having

the plaintiff examined—did not offer her a new position.

## III

As its third issue, the defendant argues that the board committed legal error in awarding compensation for an "ordinary disease of life". This argument is closely tied to the first issue and fails for the same reasons under *Kostamo, supra.* See also *Carter v Lakey Foundry Corp,* 118 Mich App 325, 333; 324 NW2d 622 (1982) (back injuries).

## IV

The defendant's final argument is that the plaintiff failed to notify Kmart of her injury, as required by MCL 418.381, 418.441; MSA 17.237(381), 17.237(441). The notice and claims provisions of the statute as they existed at the time the events below transpired provided that, in a claim for benefits arising out of an occupational disease, notice must be given the employer within 120 days after the disablement, and the filing of a claim was required within six months after the occurrence of the disablement. The notice period began to run at the time the claimant knew, or should have known, that the disease or disability might be work-related. *Krol v Hamtramck,* 398 Mich 341, 346; 248 NW2d 195 (1976). MCL 418.381; MSA 17.237(381) also provided, at the time relevant to this injury:

"In a case in which the employer has been given notice of the happening of the injury or has notice or knowledge of the happening of the accident within 3 months after the happening of the same, and fails, neglects or refuses to report the injury to the bureau as

required by the provisions of this act, the statute of limitations shall not run against the claim of the injured employee or his dependents, or in favor of the employer or his insurer, until a report of the injury has been filed with the bureau."[3]

The facts relating to this issue are not in dispute. All parties acknowledge that the notice and claim periods of the WDCA were not met by the plaintiff, yet there is no dispute that the defendant knew about the plaintiff's heart attack within three months of her last day of employment. The narrow legal question upon which this issue turns is whether the tolling provisions of MCL 418.381; MSA 17.237(381) required that the employer knew or should have known that the injury or disease was causally related to the claimant's employment. The unanimous opinion of the board did not appear to recognize such a requirement and did not find facts relative to the employer's knowledge of a causal relationship between plaintiff's heart attack and her employment, stating:

"We further find that plaintiff's supervisors were well aware of her heart condition and why she had to terminate her employment with them. Having failed to report plaintiff's condition, the notice and claim statute was tolled and cannot now be raised as a defense. *Norris v Chrysler Corp,* 391 Mich 469 (1974); *Krol v Hamtramck,* 398 Mich 341."

The adequacy of the notice required by the tolling provision of MCL 418.381; MSA 17.237(381) was the subject of a unanimous opinion by the Michigan Supreme Court in *Norris v Chrysler Corp,* 391 Mich 469, 477; 216 NW2d 783 (1974). There the Court stated:

---

[3] This section was substantially altered by 1980 PA 357, § 1 and 1981 PA 197, § 1, but is reprinted as it appeared in 1976.

"The notice given must be sufficient to make the employer aware that an injury has been sustained. If, after inquiry, the employer does not believe the injury to be compensable, it need not report the accident. However, in not reporting the accident, the employer assumes the risk that the injury will be found to be compensable. If such a determination occurs, the employer's penalty is a suspension of statutory limitations."

This standard was subsequently applied in *Krol v Hamtramck, supra,* p 347, an occupational disease case. Both the employer and employee may have been unaware of a causal connection between the work and the disability but this does not mean there has not been notice. *Combs v Michigan Mobile Homes,* 406 Mich 507, 509; 280 NW2d 451 (1979) (heart problems).

The board applied the correct law to the facts of this case in holding that having timely notice of plaintiff's condition and, having failed to report that condition, the defendant forfeited the opportunity to raise the notice and claim statute as a defense.

We affirm the board on all issues.