CARTER v LAKEY FOUNDRY CORPORATION

Docket No. 59620. Submitted June 9, 1982, at Grand Rapids.—Decided July 20, 1982.

Sam Carter petitioned for a workers' compensation hearing seeking disability benefits for a cardiopulmonary condition and for occupational lower back disease. The hearing referee found that Carter was disabled and apportioned liability for both disabilities, finding Carter's employer for nearly 20 years, Lakey Foundry Corporation, 98.27% liable and Carter's most recent employer, Cuyahoga Wrecking Company, 1.73% liable. Lakey appealed to the Workers' Compensation Appeal Board, which modified the referee's decision in part, denying apportionment of the liability for the back condition. Full responsibility for the payments for the back condition was placed on Cuyahoga. Cuyahoga appeals by leave granted. *Held:*

1. It is necessary to remand this case to the WCAB for further fact-findings since the board made no findings of fact that suggest the basis for its decision. Nothing in the board's opinion described the work Carter was performing, the nature of the back condition found by the board, or which medical diagnosis is found persuasive.

2. The question of the causation of Carter's disability must be resolved by the board on remand. In doing this, the board should carefully consider the question of whether Carter's disability may be attributable to the unquestionably peculiar nature of Carter's employment.

Remanded.

1. WORKERS' COMPENSATION — APPORTIONMENT.

The purpose of the statute authorizing apportionment of payment

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 7] 82 Am Jur 2d, Workmen's Compensation § 409.

[3] 82 Am Jur 2d, Workmen's Compensation § 240.

[4] 82 Am Jur 2d, Workmen's Compensation § 552.

[5] 82 Am Jur 2d, Workmen's Compensation §§ 553, 559, 631.

[6] 2 Am Jur 2d, Administrative Law § 654.

82 Am Jur 2d, Workmen's Compensation § 469.

[7] 82 Am Jur 2d, Workmen's Compensation §§ 547, 631.

[8] 82 Am Jur 2d, Workmen's Compensation § 298.

of workers' compensation benefits among the last employer and prior employers is to distribute equitably the liability for disease caused by similar employment conditions among the employers who were responsible for those conditions (MCL 418.435; MSA 17.237[435]).

2. Workers' Compensation — Apportionment.

The statute authorizing apportionment of payment of workers' compensation benefits among the last employer and prior employers applies only where an employee is suffering from an occupational disease due to the nature of his or her employment; where an employee's disability is attributable to a single event, work-related injury, with or without subsequent aggravation, liability for compensation is not apportionable (MCL 418.415, 418.435; MSA 17.237[415], 17.237[435]).

3. Workers' Compensation — Compensable Injuries or Disease.

An injury or disease must arise out of or in the course of employment in order to be compensable under the Worker's Disability Compensation Act (MCL 418.301, 418.401; MSA 17.237[301], 17.237[401]).

4. Workers' Compensation — Appeal Board — Findings of Fact.

The findings of the Workers' Compensation Appeal Board are conclusive in the absence of fraud if there is any competent evidence in the record to support the findings (Const 1963, art 6, § 28; MCL 418.861; MSA 17.237[861]).

5. Workers' Compensation — Appeal.

A decision of the Workers' Compensation Appeal Board may be reviewed as a question of law when the findings of fact are sufficiently detailed so that an appellate court can separate the facts the board found from the law it applied.

6. Workers' Compensation — Appeal.

Error may be committed by the Workers' Compensation Appeal Board by its basing a finding of fact on a misconception of law or by failing to correctly apply the law to a finding of fact.

7. Workers' Compensation — Apportionment — Question of Fact — Appeal.

The question of whether a particular back condition is a personal injury that is not apportionable under the Worker's Disability Compensation Act or is an occupational disease that is apportionable under the act is generally a question of fact, and the Workers' Compensation Appeal Board's determination thereof is conclusive unless the board misconstrues the law regarding

apportionment, in which case an appellate court will be free to overturn the board's decision.

8. WORKERS' COMPENSATION — BACK DISEASE — OCCUPATIONAL DIS-
    EASE.
    A back disease which is an ordinary disease of life is compensable under the Worker's Disability Compensation Act as an occupational disease where exposure to the disease is increased due to the inherent characteristics and peculiarities of employment.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather),* for defendants.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Richard F. Zapala,* Assistant Attorney General, for Self-Insurers' Security Fund.

Before: D. F. WALSH, P.J., and ALLEN and T. GILLESPIE,* JJ.

PER CURIAM. In this workers' compensation case we are again considering whether the Workers' Compensation Appeal Board erred when it refused to apportion liability among former employers for an employee's disabling back condition.

In a decision dated July 28, 1981, the WCAB found that plaintiff was disabled due to lung and back injuries and ordered apportionment of liability for payment of benefits for the lung disability. The board refused, however, to order apportionment of payments for plaintiff's back condition and placed full responsibility for those benefits on Cuyahoga Wrecking Company, plaintiff's most recent employer. Cuyahoga applied for leave to appeal, which we granted on November 9, 1981.

Plaintiff was employed for nearly 20 years at Lakey Foundry Corporation, working primarily as

---

* Circuit judge, sitting on the Court of Appeals by assignment.

a snag grinder. This job entailed lifting castings that weighed between 35 and 200 pounds, grinding them, then placing the finished work on a nearby conveyor belt. The casting with which plaintiff most commonly worked weighed about 95 pounds and was lifted manually, although a hoist was sometimes employed for heavier pieces. Plaintiff ground about ten castings per hour and he performed this work for an entire shift.

While plaintiff worked at Lakey he experienced some low back pain, although he says that he never suffered a single traumatic injury to his back. He also complained of shortness of breath.

In February, 1972, the Lakey Foundry was closed and plaintiff was laid off. He found temporary work as a meat cutter in a grocery store but left that job in a dispute over pay. Plaintiff testified that he did not lift heavy items in this job and that his back condition was not aggravated by the work.

Approximately two years after Lakey closed, plaintiff began working for Cuyahoga Wrecking Company, demolishing the Lakey facility. Plaintiff's duties included lifting and cutting large pieces of metal. Plaintiff's job terminated on December 17, 1974, and he had not found work at the time the record in this case was made.

On November 26, 1976, plaintiff petitioned for a compensation hearing, seeking disability benefits for a cardiopulmonary condition and for occupational lower back disease. On January 25, 1979, the hearing referee found that plaintiff was disabled, 90% due to dust disease and 10% due to the back condition. The referee apportioned liability for both disabilities, finding Lakey 98.27% liable and Cuyahoga 1.73%. The Self-Insurers' Security Fund was responsible for Lakey's payments and

Liberty Mutual Insurance Company insured Cuyahoga.

Lakey appealed to the WCAB, which modified the decision in part, denying apportionment of liability for the back condition. Cuyahoga applied for leave to appeal, which was granted on November 9, 1981. Lakey Foundry and the Self-Insurers' Security Fund have filed a brief arguing that the board was correct. The only issue now before us is whether the board correctly refused to apportion liability for benefits payable for plaintiff's back injury; no question is raised as to the propriety of apportionment of liability for benefits for the lung disease.

When this case was decided by the hearing referee, apportionment for occupationally related diseases was governed by MCL 418.435; MSA 17.237(435), which provided, in pertinent part:

"If the employee was employed by prior employers in an employment to the nature of which the disease was due and in which it was contracted, the hearing referee to whom the case is assigned or the director on motion made in writing by the last employer shall join any or all prior employers, mentioned in the motion, as parties-defendant.

\* \* \*

"The hearing referee shall enter an order determining liability for compensation as between the employee and the last employer. The hearing referee shall apportion liability for compensation among the several employers in proportion to the time that the employee was employed in the service of each employer in the employment to the nature of which the disease was due and in which it was contracted and shall enter a separate order in favor of the last employer and against prior employers for their proportionate share of liability, which order may be enforced in the same manner as an award for compensation."

The purpose of this provision was to distribute equitably the liability for disease caused by similar employment conditions among the employers who were responsible for those conditions. *Derwinski v Eureka Tire Co,* 407 Mich 469, 488; 286 NW2d 672 (1979).

This provision was amended by 1980 PA 357, effective January 1, 1981, which deleted apportionment for diseases. As this case was decided by the hearing referee before the effective date of the amendment, and as there has been no challenge to the applicability of the now-superseded law, we apply the quoted statute.

In order for the apportionment provision to apply, an employee must be suffering from an occupational disease due to the nature of his or her employment, a chapter 4 disability under the workers' compensation act. *Derwinski, supra,* 482. Where, however, an employee's disability is attributable to a single event, work-related injury, with or without subsequent aggravation, the injury falls under chapter 5 of the act and the liability for compensation is not apportionable. *Id.,* 485. MCL 418.415; MSA 17.237(415) and MCL 418.435; MSA 17.237(435). Back disabilities may, depending on the nature of the work-related injury or disease, fall under either category. Compare *Derwinski* with *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243; 262 NW2d 629 (1978). See also *Hughes v Lakey Foundry Corp,* 91 Mich App 170; 284 NW2d 135 (1979). In no event, however, is an injury or disease compensable unless it arises out of or in the course of employment. MCL 418.301; MSA 17.237(301), MCL 418.401; MSA 17.237(401).

In the case at bar, the hearing referee made the following findings:

"It is further ordered that as set out in § 418.535 I

find 90% of plaintiff's disability i[s] due to silicosis or other dust disease and 10% is due to other compensable cause (back). As set out in § 418.435 I apportion liability as follows: 1.73% Cuyahoga and 98.27% Lakey. The Self-Insurers' Security Fund shall reimburse Liberty 98.27% of all the amounts paid. Section 418.531 is applicable, and the Silicosis and Dust Disease Fund shall make reimbursement as provided therein.

"Plaintiff is capable of work if he can find a job within his physical capabilities and in a clean atmosphere."

The WCAB modified this decision and stated regarding apportionment of the back disability:

"We find that plaintiff's back disability falls under chapter 3 of the act. Therefore, the apportionment provisions of § 435 do not apply with respect to plaintiff's back disability. He performed ordinary labor in an ordinary fashion. Contrast his work with the board's specific factual finding contained in *Derwinski v Eureka Tire Co,* 407 Mich 469 (1979). See also *Roberts v Western Michigan Foundry,* 1980 WCABO 2028. The factual differences are strikingly apparent."

The findings of the WCAB are conclusive in the absence of fraud if there is any competent evidence in the record to support them. Const 1963, art 6, § 28, MCL 418.861; MSA 17.237(861), *Butler v Dura Corp,* 105 Mich App 508, 512; 307 NW2d 83 (1981). A decision may be reviewed as a question of law when the findings of fact are sufficiently detailed so that an appellate court can separate the facts the WCAB found from the law it applied. *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 136; 274 NW2d 411 (1979), *Butler, supra.* Error may be committed by basing a finding of fact on a misconception of law or by failing to correctly apply the law to a finding of fact. *Brax-*

*ton v Chevrolet Grey Iron Foundry Division of General Motors Corp,* 396 Mich 685, 692-693; 242 NW2d 420 (1976). The question of whether a particular back condition is a personal injury that is not apportionable or an occupational disease that is apportionable is generally a question of fact and the WCAB's determination thereof is conclusive. *Dressler, supra.* Where, however, the board misconstrues the law regarding apportionment, an appellate court will be free to overturn the board's decision. See, for example, *Derwinski.*

In the case at bar, the WCAB made no findings of fact that suggest the basis for its decision. Nothing in the WCAB opinion described the work plaintiff was performing, the nature of the back condition found by the board, or which medical diagnosis it found persuasive. Accordingly, we believe it is necessary to remand this case to the WCAB for further fact-finding.

We have, however, examined the record carefully and believe that questions of law may arise on remand that could be resolved by our discussion of them. In the interest of conserving judicial resources, we will review the law the board must apply to whatever facts it finds.

The WCAB stated its legal conclusion that plaintiff suffered from a chapter 3 disability. Nothing in the record suggests, however, that plaintiff's condition was precipitated by a single traumatic event or by an injury that was aggravated by subsequent employment. Instead, the record evidence suggests two possible underlying causes for the back disability: either plaintiff's back degenerated through the normal aging process or plaintiff's injury arose as a result of the peculiarities of the snag grinder's job, *i.e,* repeated bending and lifting of 95-pound castings. This causation question must be resolved by the WCAB on remand.

Plaintiff's back disease is an ordinary disease of life. Such a disease is compensable as an occupational disease "where exposure to the disease is increased due to the inherent characteristics and peculiarities of employment". *Mills v Detroit Tuberculosis Sanitarium,* 323 Mich 200; 35 NW2d 239 (1948), *Fox v Detroit Plastic Molding & Corporate Service,* 106 Mich App 749, 762; 308 NW2d 633 (1981). Many medical authorities recognize, as did appellant's own expert, that repetitive bending and lifting of heavy objects increases the danger of degenerative disc disease. See, for example, *Derwinski, supra,* 478. Accordingly, back conditions attributable to the peculiar work of heavy lifting and twisting have been treated as occupational diseases. In *Derwinski,* the plaintiff's lifting of 30- to 150-pound tires, repeated 50 to 60 times per day, was treated as work that could cause an occupationally related disease, although the Court did not consider any claim that such work was not "peculiar to the employment". Similarly, in the factually similar case of *Hughes v Lakey Foundry, supra,* this Court found that a back injury caused by repeated strenuous movement of the back for a foundry worker's job constituted an occupational disease. We therefore suggest that the WCAB carefully consider the question of whether plaintiff's disability may be attributable to the unquestionably peculiar nature of his employment.

Remanded for further findings of fact.